[ORAL ARGUMENT NOT SCHEDULED]

No. 25-5158

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

RFE/RL, INC.,

    Plaintiff-Appellee,

v.

KARI LAKE, *et al.*,

    Defendants-Appellants.

## REPLY BRIEF IN SUPPORT OF EMERGENCY MOTION FOR STAY PENDING APPEAL

YAAKOV M. ROTH
  *Acting Assistant Attorney General*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
DANIEL TENNY
ABIGAIL STOUT
BENJAMIN C. WEI
  *Attorneys*
  *Civil Division, Room 7215*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-1838*
  *daniel.tenny@usdoj.gov*

# INTRODUCTION

This Court recently granted a stay of an order that required the U.S. Agency for Global Media to make payments to grantees. *See* Order, *Widakuswara v. Lake*, No. 25-5144 (D.C. Cir. May 3, 2025) ("*Widakuswara* Order"). A stay is likewise warranted here.

Plaintiff's opposition is premised on two fundamental misunderstandings. First, after calling a non-response a refusal, plaintiff conflates the alleged refusal to accept an offer in the course of an ongoing negotiation with a final decision regarding the terms and conditions that will be acceptable to the Agency. But the former—at issue here—concerns an agency's deliberations about what agreement to enter, and can be challenged only if the refusal to accept an offer at a particular time satisfies the stringent mandamus-like standard for agency action unlawfully withheld or unreasonably delayed. Plaintiff thus defends the district court's action under the wrong standard, and provides no argument that it was justified under the correct standard.

Second, plaintiff conflates an order requiring the Agency to enter into a contract with an order compelling the Agency to make payment under that contract. The district court entered both orders here;

plaintiff vigorously defends the district court's authority, notwithstanding the Tucker Act, to enter the first order, but provides no defense of the second. And that is because there is none.

These errors also infect plaintiff's discussion of the equities. Plaintiff can make no equitable case for judicial interference with ongoing negotiations. And at bottom, plaintiff's discussion of the equities makes clear that this is a case seeking to force the government to pay money, which plaintiff has no explanation for why the district court has jurisdiction to do. The motion for a stay should be granted.

**ARGUMENT**

i. *The district court erred in pretermitting ongoing negotiations between the parties.*

As we explained in our motion, to the extent the Agency's failure to enter into an agreement for April is reviewable under the APA at all, it could only be on the theory that agency action has been "unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1). A cause of action making that claim would have to satisfy the mandamus standard, which the district court never purported to apply, and which plaintiff fails altogether to address in its opposition. In blurring the lines by

declaring that inaction is a "final decision," the court applied a lower standard of review than Congress contemplated.

At the same time that it forfeits any argument that the proper, agency-inaction standard was satisfied, plaintiff begins by arguing that the government "forfeited" its "principal argument on appeal—disputing final agency action." Opp'n 18. This contention is mysterious; the government's brief in the district court contained a multi-page section entitled "The Court should deny the preliminary injunction motion because Defendant's draft grant agreement proposal is not final agency action reviewable under the APA." Dkt. No. 44, at 14 (bolding omitted); *see also id*. at 17-18. That section argued—as we are arguing here—that the Agency "had not consummated the decisionmaking process" because "the parties have been negotiating over the instrument." *Id.* at 16. And the district court addressed the issue at length in its order. *See* Add. 11-13.

Although the district court correctly recognized that the government had disputed the presence of a final agency action, its resolution of the issue was erroneous. The term "agency action" in the APA is a statutorily defined term of art. 5 U.S.C. § 551(13). "The term

is similar in concept to the meaning of 'final decision' as used in describing the appealability of court orders." *Village of Bald Head Island v. U.S. Army Corps of Eng'rs*, 714 F.3d 186, 193 (4th Cir. 2013) (citing 28 U.S.C. § 1291). Plaintiff has identified no such final decision.

Plaintiff's opposition is rife with accusations that the Agency failed to respond to various proposals, or to accept them. *See*, *e.g.*, Opp'n 9-10, 19. And that is what the district court relied on. *See* Add. 10-12 (finding agency action existed because of the Agency's "refusal" to consider plaintiff's offer to enter into a one-month agreement). That is not a final decision. Rejecting counterproposals, requesting justification for various requests, and other negotiating tactics are not "agency action" at all, let alone final agency action, even if plaintiff deems them deleterious to its perceived need for prompt resolution of the dispute regarding the contents of a grant agreement.

The case on which plaintiff relies provides no support for its apparent view that the rejection of each counterproposal in a negotiation constitutes final agency action. In *SecurityPoint Holdings, Inc. v. Transportation Secretary Administration*, 769 F.3d 1184 (D.C. Cir. 2014), the final agency action at issue unequivocally and finally

4

rejected the plaintiff's request that certain language not be included in memoranda of understanding with airports. *Id.* at 1187. The portion of the decision that plaintiff cites comes later, when the Court concluded that the final agency action was arbitrary and capricious because it failed to address plaintiff's contentions and thus failed "to provide any basis upon which we could conclude that it was the product of reasoned decisionmaking." *Id.* at 1187-89 (quotations omitted). The case does not stand for the proposition that failure to respond to a request is final agency action. And plaintiff points to nothing like the final and unequivocal determination about the contents of an agency agreement that this Court relied upon in the portion of the *SecurityPoint Holdings* decision that discusses whether there was a final agency action.

As noted, the context here was entirely different. The court and plaintiff repeatedly characterize the Agency's lack of response to the request to enter into a temporary agreement as a "refusal" to enter into a one-month agreement despite "numerous inquiries." Add. 11. But these inquiries were part of a broader negotiation about a master grant agreement for fiscal year 2025. In that context, it is hardly unusual for a proposal concerning an ancillary issue not to receive a specific and

5

immediate response.  And the absence of an immediate response does not mean that the proposal has been finally rejected; as negotiations ebb and flow, proposals can be revised, revisited, or reconsidered. Treating the refusal to accept a such proposal in the midst of negotiations as final agency action would inject the judiciary into ongoing negotiations—exactly what the requirement of final agency action was designed to prevent.

These negotiations are the product of the broad supervisory discretion that the governing statute grants to the Agency.  The International Broadcasting Act of 1994 vests the Agency with broad oversight authority—including the authority to "make and supervise grants," "allocate funds appropriated for international broadcasting activities among the various elements of the [Agency] and grantees," "review and evaluate the mission and operation of, and to assess the quality, effectiveness, and professional integrity of, all such [entities'] activities within the context of the broad foreign policy objectives of the United States"; and "undertake such studies as may be necessary to identify areas in which broadcasting activities under its authority could be made more efficient and economical."  22 U.S.C. §§ 6204(a)(2), (a)(5),

(a)(6), (a)(8). This Court thus recently recognized, in granting a stay of an order that required the payment of funds to other grantees of the Agency, that "the governing statutes . . . do not give [grantees] an unqualified right to the appropriated funds." *Widakuswara* Order 7.

Moreover, Section 6207 of the statute provides specific direction for plaintiff in particular—including restrictions and required provisions related to plaintiff's board of directors, principal place of business, lobbying efforts, and even first class travel for plaintiff's employees, among other directions. 22 U.S.C. §§ 6207(a), (b), (g), (h); *see also id.* § 6207(j) (providing for extensive audit authority). And if the Agency's Chief Executive Officer "determines at any time that [plaintiff] is not carrying out the functions described in [Section 6207] in an effective and economical manner, the Agency may award the grant to carry out such functions to another entity." 22 U.S.C. § 6207(d); *see also id.* § 6207(g)(3) (explaining that "the failure to comply with the requirements of [Section 6207] may result in suspension or termination of a grant without further obligation by the Agency or the United States"). Instead of stepping into the middle of negotiations, the court

7

should have deferred to the negotiation process and permitted the Agency to exercise its oversight authority under the statute.

Plaintiff also provides no response to the point that even if the court were inclined to second-guess the Agency's ostensibly final decision not to enter into the contract of plaintiff's choosing, it had no authority to order the Agency to enter into a particular contract. As this Court recently explained, if the governing statutes create "any entitlement for [grantees] at all, they at most would require [the Agency] to enter grants obligating the appropriated amounts to the [grantee]." *Widakuswara* Order 7. But even then, consistent with the statute, the Agency "may impose various conditions on a [grantee's] receipt of the appropriated funds." *Id.* at 7 n.4. Nothing in the statute dictates those conditions, and thus the court lacked authority to order the Agency to agree to them. *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 65 (2004) (absent a mandatory duty, "a court can compel the agency to act, but has no power to specify what the action must be").

This Court's recent order in *Widakuswara* reflects the more general principle that courts should give an agency "considerable leeway" when reviewing contract negotiations. *Doe v. Devine*, 703 F.2d

1319, 1321, 1326 (D.C. Cir. 1983) (reviewing the parties' contract negotiations to determine whether the final contract ultimately entered into "rationally accommodated" the agency's competing goals). And as noted in our motion—in a passage to which plaintiff does not respond— the very case on which the district court relied applied the traditional APA rule that a court should not step into an agency's shoes but instead should allow it to exercise its own discretion. By ordering the Agency into a particular contract and superimposing particular terms and conditions on the Agency against its judgment, the district court usurped the Agency's broad oversight authority to "make and supervise" grants and "impose various conditions" and terms on a grantee. *Widakuswara* Order 7 n.4.

    ii.    *The district court erred by concluding it had jurisdiction to order the Agency to pay plaintiff $12,178,590.*

Plaintiff misunderstands the government's argument with regard to the Tucker Act. Our basic point is that the district court has no authority to order the government to pay money ostensibly due under a contract. *Department of Educ. v. California*, 604 U.S. ---, 2025 WL 1008354, at *1 (Apr. 4, 2025); *U.S. Conf. of Catholic Bishops v. U.S.*

*Dep't of State*, 2025 WL 763738, at *5 (D.D.C. Mar. 11, 2025). That is what this Court just held in granting a stay in *Widakuswara*.

Plaintiff provides no response to that simple point. Instead, plaintiff focuses on the district court's separate order requiring the government to enter into a contract. That was wrong for the reasons discussed above, not because of the Tucker Act. But plaintiff provides no explanation whatsoever of why, having ordered the government to enter into a contract, the district court was entitled to take the additional step of ordering the government to pay money. And given that ordering the government to pay money immediately was the district court's evident goal—and its ability to do so was the basis for concluding that any injunctive relief was warranted at all—this essentially conceded flaw infects the district court's entire order. *See Widakuswara* Order 6-7 (explaining that "it is the inherently contractual nature of the relief afforded—*not* any characterization of the relief as money damages—that makes the [Court of Federal Claims] the exclusive forum for this suit" and cautioning against "creative drafting" (quotation omitted)).

Plaintiff's contention that this is "not a contract action because there is no contract" is beside the point for the same reason. Opp'n 13. At bottom, the district court ordered the government to pay out under a contract. As this Court recently explained, the district court lacked jurisdiction to issue such an order. *Widakuswara* Order 6-8. That the contract was court-imposed makes no difference to the Tucker Act analysis. *See id.* at 7 ("If these statutes created any entitlement for the networks at all, they at most would require [the Agency] to enter grants obligating the appropriated amounts to the networks.").

> iii. *The district court erred in concluding the plaintiff would suffer "irreparable injury" and ignored the harm its order did to the Agency's ability to negotiate an appropriate grant agreement.*

As discussed above, the district court's order was disruptive. The court intervened in the parties' grant negotiations and ordered the Agency to enter into a grant agreement on terms it was actively trying to avoid via negotiation. The district court thus inserted itself into the Agency's operations and usurped its statutory prerogative to "make and supervise" grant agreements.

Plaintiff's response that the court was carrying out Congress's will ignores that Congress entrusted the Agency with negotiating the terms

under which the money it was appropriating should be distributed. In addition, plaintiff's insistence that the district court was correct to order the immediate payment of money underscores the degree to which this aspect of the order exceeds the district court's jurisdiction.

The order also undermines the role that Congress carefully crafted for the Agency and actively harms the negotiation process. Almost every exchange between the Agency and plaintiff ended up as an exhibit to a public court filing, and status conferences routinely began with providing an update on the parties' negotiations—describing who spoke to whom most recently or how many days had passed since one party reached out to the other. Such an environment, where plaintiff can simply complain to the court rather than confront hard choices, makes negotiation impossible and diminishes the possibility the parties will reach a fiscal year 2025 grant agreement.

Plaintiff's claims of harm are predicated on a particular view of the negotiations and the circumstances under which it could enter into an agreement. Plaintiff admits that the Agency has been responsive, has offered a grant agreement, and has been willing to engage in give-and-take. *See* Opp'n 7-12. Plaintiff nonetheless contends that the

negotiations are not *bona fide* because it dislikes some of the terms that the Agency included in its proposed grant agreement. Opp'n 5-10, 21. But that can hardly be a reason for injunctive relief. If that were sufficient, then any party to a contract negotiation or any grantee could run to the court when it dislikes the terms proposed to it, claiming that the mere proposal of allegedly unreasonable terms constitutes irreparable harm. This Court should not encourage such behavior. *See Widakuswara* Order 12 (noting that "the public has an interest in the Judicial Branch's respect for the jurisdictional boundaries laid down by Congress").

## CONCLUSION

For the foregoing reasons and those given in our motion, this Court should enter a stay pending appeal.

Respectfully submitted,

YAAKOV M. ROTH
  *Acting Assistant Attorney General*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN

*s/ Daniel Tenny*
DANIEL TENNY
ABIGAIL STOUT
BENJAMIN C. WEI
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7215*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-1838*
  *daniel.tenny@usdoj.gov*

MAY 2025

14

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2,503 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Century Schoolbook 14-point font, a proportionally spaced typeface.

                                                    */s/ Daniel Tenny*
                                                    Daniel Tenny